thority. But this argument is rather cal-culated to perplex, than to satisfy, the mind. Lawson had, in fact, the direction of the voyage, and continued in that direction. Although he might, with impunity, have ceased to act as the agent of the owners of the cargo, and have acted as an enemy, yet he did not divest himself of the character of an agent, nor assume that of an enemy. Acting under his original authority, he violated the laws of the United States; and those who employed him must, I think, pay the penalty incurred by that violation. The enemy character of an agent, cannot, I think, exempt his employer from the penalty attached by law, to an offence. But the words of the act, subject to forfeiture the cargo of a citizen imported in a British ves-sel. The terms of the law punish the act, without inquiring into the criminal intent. The cargo of a British vessel, arriving with-in the limits of the United States, is exempt from forfeiture only, if "forced in by dis-tress, or by the dangers of the sea." These are the only exceptions found in the act. If any others can be introduced by con-struction, they must be founded on the substantial principles of equity, not on the technical subtleties of law.

It has also been argued, that had this ves-sel been captured and brought in by an American cruiser, or even by the owners themselves, the cargo would not have been forfeited. This may be true. But in that case, the captors would have been in the exercise of the rights of war; and the ves-sel, with her cargo, would have been brought in jure belli. In this case, the act declaring war, and the prize act, might have operated on the municipal forfeiture, and have sus-pended it. But in the case which has oc-curred, the act which created the forfeiture is not performed in the exercise of the rights of war, but is an act totally unconnect-ed with war.

I have considered this case with no dispo-sition favourable to the condemnation of this cargo. But, according to the view I have taken of the subject, the cargo is lia-ble to forfeiture, in consequence of being in a British vessel, which has arrived within the limits of the United States, while the non-intercourse law was in force. I shall not regret it, if a higher tribunal shall be of a different opinion.

The sentence of the district court is af-firmed with costs.

---

THORN (UNITED STATES v.). See Case No. 16,493.

---

## Case No. 13,985a.

### THORN v. The VICTORIA.

[Nowhere reported; opinion not now accessi-ble.]

---

## Case No. 13,986.

### THORNBURGH v. SAVAGE MIN. CO.

[1 Pac. Law Mag. 267; 7 Morr. Min. Rep. 667.]

Circuit Court, D. Nevada. 1867.

MINING—SURVEY—INJUNCTION—COURT'S JURISDIC-TION—SERVICE UPON CORPORATIONS—FOREIGN CORPORATION.

1. A court of equity has the power, in a min-ing case, to compel an inspection and survey of the claims and works of the parties, and ought to issue such order when satisfied that the ap-plication therefor is made in good faith and for the information of the court upon the questions involved in the case.

[Cited in Montana Co. v. St. Louis Mining & Milling Co., 152 U. S. 166, 14 Sup. Ct. 507.]

2. The court has acquired jurisdiction over the defendant—First, by his voluntary appear-ance in the action; and, second, by service of the subpoena upon the superintendent and general managing agent of the defendant within this district; that thereby the person of the defend-ant was found in the district, within the mean-ing of the judicial act of 1789; that by a strict construction of that act, and of the constitution, no corporation could be a party to a suit in the national courts.

3. There is "nothing in the character of a cor-poration to prevent its suing or being sued like a natural person. It is, in legal contemplation, a person having existence, invested with rights and subjected to liabilities, and very properly a party to proceedings in courts of law or equity whenever those rights or liabilities are drawn in controversy."

4. The corporation in this case in mining prop-erty, and carrying on a general business, by its officers and agents, within this district, ought to be, and is, subject to all the liabilities grow-ing out of that business, and can be reached by process out of this court served upon such resi-dent managing officers or agents, under section 29 of the practice act of this state, adopted by the rules of this court.

5. Any corporation having property in the state is "a body politic within this state," ac-cording to the thirteenth section of the act, di-recting proceedings against trustees of debtors.

The plaintiff [William B. Thornburgh] claimed to be the owner of a portion of a certain quartz ledge in Storey county, Ne-vada, called the "Mitchell Lode," and had commenced an action at law for the posses-sion thereof, claiming that said lode was dis-tinct from, but next adjacent to, the Com-stock lode. The above action was brought in equity to restrain defendant, a corpora-tion organized under the laws of the state of California, but owning property and doing mining business in the state of Nevada, from mining the premises in dispute at law. An injunction issued upon the return day of a rule to show cause, which rule the court found to have been properly served upon Charles Bonner, the superintendent and gen-eral managing agent of the defendant. While the injunction was pending, complainant moved, upon bill and affidavit before one of the judges of said court, at chambers, for an order of survey and inspection of the prem-ises in dispute. The judge issued a rule